WMC

FILED

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

07 OCT 17 AM 11:45

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

DEPUTY

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>Plaintiff,<br>v.<br>**1.) Ismael SANTIAGO-Gonzalez**<br>**2.) Salvador CARRILLO-Rodriguez**<br>Defendant(s), | Magistrate Case No. '07 MJ 2480<br>COMPLAINT FOR VIOLATION OF:<br>Title 8 U.S.C., Sec. 1324 (a)(1)(A)(ii)<br>Transportation of Illegal Aliens |

The undersigned complainant, being duly sworn, states:

On or about **October 15, 2007,** within the Southern District of California, defendants **Ismael SANTIAGO-Gonzalez and Salvador CARRILLO-Rodriguez** with the intent to violate the immigration laws of the United States, knowing and in reckless disregard of the fact that aliens, namely, **Jorge MENA-Vargas, Antonio HERNANDEZ-Vasquez, Jose PIMENTEL-Esquivel, and Jose Jesus FLORES-Zamora** had come to, entered and remained in the United States in violation of law, did transport and move, said aliens within the United States in furtherance of such violation of law; in violation of Title 8, United States Code, Section 1324(a)(1)(A)(ii).

And the complainant further states that this complaint is based on the attached statement of facts, which is incorporated herein by reference.

SIGNATURE OF COMPLAINANT
James Trombley
Senior Patrol Agent

SWORN TO BEFORE ME AND SUBSCRIBED IN MY PRESENCE, THIS **17th** DAY OF **OCTOBER 2007**

William McCurine Jr.
UNITED STATES MAGISTRATE JUDGE

WMC

**CONTINUATION OF COMPLAINT:**
**1.) Ismael SANTIAGO-Gonzalez**
**2.) Salvador CARRILLO-Rodriguez**

## PROBABLE CAUSE STATEMENT

Furthermore, the complainant states that **Jorge MENA-Vargas, Antonio HERNANDEZ-Vasquez, Jose PIMENTEL-Esquivel, and Jose Jesus FLORES-Zamora** are citizens of a country other than the United States; that said aliens have admitted that they are deportable; that their testimony is material, that it is impracticable to secure their attendance at the trial by subpoena; and they are material witnesses in relation to this criminal charge and should be held or admitted to bail pursuant to Title 18, United States Code, Section 3144.

On Monday, October 15, 2007 at approximately 10:30 p.m., Border Patrol agents assigned to the San Diego Sector Smuggling Interdiction Group (SIG) were conducting anti-smuggling operations in the Pine Valley, California area. Agents were conducting plainclothes operations in unmarked Bureau vehicles. This area is located approximately twelve miles north and ten miles east of the Tecate, California Port of Entry.

Foot-guide smugglers routinely smuggle illegal aliens afoot in this area to predetermined locations where they await smuggling conveyances. Smugglers subsequently pick up the illegal aliens in vehicles and transport them to locations east of the Interstate 8 Border Patrol Checkpoint. Agents were observing traffic for indications of alien smuggling along the Interstate 8 smuggling corridor.

Senior Patrol Agent B. Wakefield was parked near the junction of Pine Valley Road and Interstate 8. Agent Wakefield observed a dark green Ford Explorer and a dark blue Nissan Maxima traveling north on Pine Valley Road after exiting the eastbound lanes of Interstate 8. The Explorer and the Maxima entered the westbound lanes of Interstate 8 and traveled west towards San Diego, California. This route of travel is frequently utilized by drivers of smuggling conveyances. Agent Wakefield advised other SIG agents of his observations.

Senior Patrol Agent S. Lowe traveled west on Interstate 8 near the Pine Creek Bridge. This area is approximately two miles west of the Pine Valley exit on Interstate 8. Agent Lowe traveled past the Maxima and observed that the driver had short cropped hair and wore a dark long sleeved shirt with a collar. There were no other visible occupants in the Maxima. Agent Lowe traveled past the Explorer and observed that the driver was a male of small stature with short cropped hair and a thin beard and goatee. There were no other visible occupants in the Explorer. The windows of the Explorer and the Maxima were clear and neither vehicle appeared to contain a heavy load.

Agent Lowe traveled westbound just ahead of the Explorer and the Maxima towards the Highway 79 exit at Interstate 8. Approximately one half mile east of Highway 79 at Interstate 8, the drivers of both vehicles suddenly pulled to the north shoulder of westbound Interstate 8, stopped, and turned the vehicle lights off.

Agent Lowe continued to travel slowly on westbound Interstate 8 for approximately two miles when the Explorer and the Maxima passed Agent Lowe as he traveled west on Interstate 8 approximately two miles east of the East Willows exit. The Explorer traveled just ahead of the Maxima. Both vehicles made frequent lane changes and traveled at varying speeds. The Maxima followed the Explorer closely, matching the lane changes and speed of the Explorer.

The Explorer and the Maxima now obviously contained heavy loads, as evidenced by the slow return of the suspensions and swaying of the vehicles upon encountering dips and bumps in the highway. The windows of the Explorer and the Maxima soon became obscured by fog, indicative of a group of people hidden inside the vehicles.

WMC

**CONTINUATION OF COMPLAINT:**
**1.) Ismael SANTIAGO-Gonzalez**
**2.) Salvador CARRILLO-Rodriguez**

The Maxima pulled alongside the Explorer as both vehicles approached the Willows exit. The Maxima and the Explorer traveled side by side for approximately two miles when the driver of the Maxima suddenly accelerated from the Explorer.

SIG agents followed the Explorer and the Maxima discreetly at a distance on westbound Interstate 8. Agents Lowe, E. Penagos, and L. Gutierrez all traveled past the Explorer and the Maxima and were able to observe physical characteristics and clothing worn by both drivers. Agents Lowe, Penagos, and Gutierrez further observed multiple occupants now sitting upright in the Explorer and the Maxima.

The driver of the Explorer traveled south on State Route 125 from Interstate 8 and then west on Highway 94. The driver of the Maxima continued to travel west on Interstate 8 from the Interstate 8, State Route 125 interchange. The driver of the Explorer continued driving west on Highway 94 for approximately two miles. The driver exited Highway 94 at College Grove Way and traveled north to the intersection of College Grove Way and College Grove Drive, stopping at a red light. Agent Wakefield activated the emergency lights and siren of his Bureau vehicle.

At approximately 11:05 p.m., Agents Wakefield, G. Medina, E. Ortega, and Penagos approached the driver of the Explorer and identified themselves as Border Patrol agents in the English and Spanish languages. Agents wore Bureau issued tactical vests that bear the insignia POLICE FEDERAL AGENT. Agents displayed their Bureau issued badge from lanyards hanging from their necks. Agents observed several people dressed in clothing suitable for cold weather, wearing backpacks, lying down in the rear cargo area of the Explorer. Agents removed the driver of the Explorer and placed him in handcuffs.

Agents questioned the driver, later identified as Defendant #2 **Salvador CARRILLO-Rodriguez**, the front passenger, and the five people lying down in the rear cargo area of the Explorer as to their citizenship and nationality in the English and Spanish languages. Each person said he was a citizen and national of Mexico. None possessed immigration documents allowing them to enter, or remain, in the United States legally. All seven illegal aliens were arrested and transported to the El Cajon Border Patrol Station.

Agent Wakefield advised SIG agents following the Maxima that the Explorer contained seven illegal aliens. SIG agents continued to follow the Maxima and observe it.

The driver of the Maxima continuously ignored traffic lights and signs and drove in an erratic and dangerous manner. The driver eventually traveled west on Monroe Avenue and then north on Terrace Drive before arriving at a dead end near the intersection of Terrace Drive and Adams Avenue where he stopped the Maxima. Agents Lowe, Gutierrez, and Supervisory Border Patrol Agent S. Wilson stopped their vehicles near the Maxima.

At approximately 11:15p.m., Agent Lowe activated the lights and siren of his Bureau vehicle and Agents Lowe, Wilson, and Gutierrez approached the Maxima. Agents wore Bureau issued Tactical vests that bear the insignia POLICE FEDERAL AGENT. Agents displayed their Bureau issued badge from lanyards hanging from their necks and identified themselves as Border Patrol agents in the English and Spanish languages.

All three agents observed the driver and front seat passenger suddenly and expeditiously flee the Maxima, running west, in front of Agent Lowe's Bureau vehicle, and then north on Terrace Drive towards Adams Avenue. Agents pursued the two fleeing subjects afoot, repeatedly identifying themselves as Border Patrol agents and instructing the two subjects to stop in the English and Spanish languages.

WMC

**CONTINUATION OF COMPLAINT:**
**1.) Ismael SANTIAGO-Gonzalez**
**2.) Salvador CARRILLO-Rodriguez**

Agent Wilson detained the driver of the Maxima and placed him in handcuffs. Agent Wilson questioned the driver, later identified as Defendant #1 **Ismael SANTIAGO-Gonzalez**, as to his citizenship and nationality in the Spanish language. SANTIAGO said he was a citizen and national of Mexico. SANTIAGO did not possess immigration documents allowing him to enter, or remain, in the United States legally.

The fleeing front seat passenger ran west on Adams Avenue and then south on the Interstate 15 on ramp. The fleeing subject was a male, approximately five feet, eight inches tall, wearing a bright green sweatshirt and blue jeans.

Agent Lowe approached three occupants that were slouched in the rear seat of the Maxima and identified himself as a Border Patrol agent in the English and Spanish languages. Agent Lowe questioned each person as to their citizenship and nationality. All three occupants said they were citizens and nationals of Mexico. None possessed immigration documents allowing them to enter, or remain, in the United States legally. Agent Lowe arrested the three illegal aliens.

Agents Wakefield and Penagos arrived at Adams Avenue and attempted to locate the fleeing subject. Officers of the San Diego Police Department arrived on scene and offered to assist with locating the fleeing suspect. Agents and officers were unable to locate him at that time.

Approximately thirty minutes after agents and officers began searching for the fleeing subject, SDPD Officers Clem and Burris encountered a male subject matching the fleeing subject's description on El Cajon Boulevard near 34th Street. Officers Clem and Burris detained the subject until Agents Wakefield and Lowe arrived on scene.

Agent Wakefield questioned the subject, later identified as Julio Cesar ALMANZA-Rodriguez, as to his citizenship and nationality. ALMANZA said that he was a citizen and national of Mexico. ALMANZA did not possess immigration documents allowing him to enter, or remain, in the United States legally. Agents Wakefield and Lowe arrested and transported ALMANZA to the El Cajon Border Patrol Station.

**STATEMENT OF DEFENDANT #1: Ismael SANTIAGO-Gonzalez**

DEFENDANT #1, Ismael SANTIAGO-Gonzalez was advised of his Miranda rights in the Spanish Language. SANTIAGO stated that he understood his rights and was willing to answer questions without a lawyer present. SANTIAGO is a citizen and national of Mexico and does not possess immigration documents allowing him to enter, or remain, in the United States legally.

SANTIAGO admitted to crossing into the United States illegally approximately two months ago through the hills near Tecate, California. SANTIAGO stated that he did not have to pay because he crossed in lieu of payment if he worked for the alien smuggling organization as a driver. SANTIAGO stated that he currently does not have any documents allowing him to be or remain in the United States legally.

SANTIAGO stated that he received a call at approximately 8:00 pm on October 14, 2007 from a person known to him as "Corazon Valiente". This person, according to SANTIAGO, is the main smuggler for whom he works.

SANTIAGO stated that he was told to meet "Corazon Valiente" at a gas station located just off of Interstate 805 and Home Avenue. Once there he was instructed to lead someone else and pick up illegal aliens. SANTIAGO stated that the driver of the other load vehicle is a new driver for the alien smuggling organization.

WMC

**CONTINUATION OF COMPLAINT:**
**1.) Ismael SANTIAGO-Gonzalez**
**2.) Salvador CARRILLO-Rodriguez**

SANTIAGO stated that he was to pick up east of Japatul Road on Interstate 8. SANTIAGO stated that the load up spot is on the westbound lanes of I-8 near a sign reading Descanso or Japatul. Once he picked them up, SANTIAGO was to lead the other vehicle to El Cajon Boulevard to an alley and transfer the bodies to other people waiting at the drop off location. If successful, SANTIAGO stated that he was to be paid $100.00 USD per alien.

SANTIAGO stated that he and the other driver, Defendant #2, CARRILLO, separated because they are instructed to do so in case one gets caught at least one can make it. Once SANTIAGO realized he was being followed, he claimed he bailed out of the vehicle because he was stupid. SANTIAGO stated that he figured out he was being followed when he made an illegal turn and saw vehicles still behind him. SANTIAGO admitted to trying to pick up two other times but was arrested before he could.

**STATEMENT OF DEFENDANT #2: Salvador CARRILLO-Rodriguez**

DEFENDANT #2, Salvador CARRILLO-Rodriguez was advised of his Miranda rights in the Spanish language. CARRILLO stated that he understood his rights and was willing to answer questions without a lawyer present. CARRILLO is a citizen and national of Mexico and does not possess immigration documents allowing him to enter, or remain, in the United States legally.

CARRILLO admitted to crossing into the United States seven months ago illegally near Tecate, California. CARRILLO stated that he was at a party with some friends and was asked if he wanted to make some money picking up illegal aliens. CARRILLO believes he was to get paid $100.00 per person. CARRILLO stated that he was instructed to pick up the Explorer on University Avenue and Orange and follow a black Nissan Maxima. CARRILLO stated that they picked up the illegal aliens and headed west bound but got separated after picking up the illegal aliens. CARRILLO stated that he got off College Grove because he knew the area and was heading back to University Avenue. CARRILLO claims that he did not know where to take the illegal aliens.

**STATEMENT OF MATERIAL WITNESS:**

The statements of material witnesses **Jorge MENA-Vargas, Antonio HERNANDEZ-Vasquez, Jose PIMENTEL-Esquivel, and Jose Jesus FLORES-Zamora** agree in summary that they are citizens and nationals of Mexico and illegally present in the United States. They stated that they do not have any immigration documents allowing them to be in the United States legally. They stated that arrangements had been made in Mexico to be smuggled into the United States. HERNANDEZ, PIMENTEL and FLORES stated that they were to pay between $1,000.00 to $1,800.00 U.S. dollars to be smuggled into the United States.

[signature]
William McCurine Jr.
U. S. Magistrate Judge

10/17/07, 0924hrs
Date/Time

[signature]
James Trombley
Senior Patrol Agent